## ALM v. ANDREWS BROS. CO.

1. WHEN JUDGMENT WILL BE REVERSED FOR INCOMPETENCY OF A JUROR.

A judgment of a trial court will not be reversed because of the alleged incompetency of one of the jurors impaneled at the trial, unless the evidence of such juror's incompetency is clear.

2. WHEN A NEW TRIAL SHOULD BE GRANTED FOR MISCONDUCT OF A JUROR.

Where a party seeks a new trial on the ground of the misconduct of a juror, and the act, constituting such misconduct, was one from which prejudice could naturally be inferred, or was such, that the party, seeking the new trial, was prejudiced thereby, in the absence of a showing to the contrary, a new trial should be granted.

FRAZIER, J. (orally).

The case of August Alm by next friend against Andrews Brothers company is a petition in error to reverse the judgment of the court of common pleas upon a motion for a new trial on the ground of disqualification and misconduct of a juror.

The plaintiff in error claims that the juror was disqualified by reason of deafness. The record shows that the fact of deafness, or claimed deafness, was not known to the party until the impaneling of a jury in another case, that it was then discovered by counsel from which we may infer that he was a regular juror returned in the regular way, nor does it appear from the evidence, if the juror was disqualified as is claimed, that any means was taken by the party in order to ascertain that fact, they assuming, no doubt, that he, being a regular juror, he had the qualification and was competent.

There are numerous cases reported in the Ohio and Ohio St. reports in which the want of qualification of jurors are discussed, and in all of them it is laid down that the party complaining, must have been diligent to ascertain and discover the facts. In *Watts* v. *Ruth*, 30 Ohio St., 32, the juror was a minor; it is held "when a party, at the time the juror is impanelled, fails to make any inquiry of the juror as to his competency, he, by such omission, waives all objection to the competency of such juror, that could have been ascertained by such inquiry, except such as the court is required to ascertain, *sua sponte*." In *Kenrick* v. *Reppard*, 23 Ohio St., 333, the syllabus is " as a general rule, a party failing to make inquiry as to the competency of a juror at the time he is impaneled will be held to have waived all objections to his competency; and it is not enough, in order to take the case out of the general rule, for the party to show simply that at the time of impaneling the juror, he was ignorant of the fact of his incompetency, or believed him to be competent; and the rule applies as well to jurors summoned upon special venire as to jurors drawn from the box." And in *Dokes* v. *Soards*, 8 Dec. R., 621, the district court of Hamilton county held, that a juror could neither speak nor understand English is ground of challenge, but it is not ground for new trial when not objected to before trial. Being an objection to the competency it is waived unless he is examined and challenged, and mere ignorance of the party is not enough. He should have exercised his diligence in finding out before and not after trial.

In Thompson and Merriam on Jurors, the rule is stated that the testimony must be clear in order to establish incompetency on the part of jurors and we are not satisfied from this evidence upon this branch of the case, that the court below erred. The judge below had the juror before him, and he was orally examined in open court as a witness upon the hearing of the motion and that court had much better means of judging and determining whether the juror's hearing was such as to disqualify him, than we can from the record alone. The court be-

low overruled the motion and we cannot say it erred in doing so. And from the evidence we think on this branch of the case the court did not err.

Upon the other branch of the case the misconduct of the jury, it is held in some jurisdictions that it is incumbent upon a party seeking a refusal on account of the misconduct of a juror to show that he was prejudiced, for instance, if misconduct on the part of the juror is shown it must also appear that he was prejudiced thereby.

We think the better rule is that where the act complained of is such from which prejudice would naturally be inferred we should, in the absence of a showing in the record to the contrary, hold he is thereby prejudiced; ·and that the plaintiff in order to have the benefit of his exception was not required to set out any part of the testimony introduced upon the trial to the jury.

The misconduct is claimed to have occurred during a view ordered under section 5191 Revised Statutes, and with other testimony the plaintiff offered the affidavit of some of the jurors to show misconduct on the part of other jurors.

In *Kent* v. *State*, 42 Ohio St., 426, it is held, " the affidavits of jurors will not be regarded for the purpose of setting aside the verdict, until misconduct of the jury is shown *aliunde*."

In the case at bar they are not seeking to invade the jury room; they are inquiring of conduct outside of the jury room, and during the view of the premises or place where the injury occurred. But assuming all the testimony offered to be competent, the record must clearly show there was misconduct. I shall refer only to the testimony of such witnesses as speak of the misconduct, or claimed misconduct of the juror, C. B. Ramser.

John Louster says he was one of the jurors on the trial of this cause, that C. B. Ramser was also one of said jurors, that he was not much acquainted with Ramser until on the trial, and says, " we were sent down to the rolling mill to look at the straightening machine, and while we were down there looking at the machine, I heard C. B. Ramser talking to other jurors. He said, " any one that put his hand in there ought to be hurt." He also states that Ramser kept on talking while down there and on the way back to the courthouse.

Plaintiff introduced the testimony of Oscar Johnson, who states he is an uncle, of the plaintiff and says, " I was standing near the cog-wheel, near the back end of the machine and while standing there, I heard two of the jurymen talking of the case. I was standing pretty close to them, I heard one of them say that any one that would put his hand in a place like that ought to be hurt or might as well be hurt or something like that," and gives further testimony to show or tending to show the person making the statement was a juror, but does not identify or name the juror. Also the affidavit of James McKay, one of the plaintiff's attorneys, who says, " I heard Mr. Ramser and other jurors talking together at the rear end of the machine. I was at the ·other end of the machine, about ten feet away, and could not hear what they said. Mr. Louster and Mr. Parkins, two of the jurors, were standing between them and me and near the cog-wheel. One of them said, I do not know which one, said, if a boy got his hand in that wheel he would be a goner."

We have no information as to what this straightening machine is, other than what is contained in the pleadings, and by them it is in issue where the plaintiff's hand was caught and how he received the injury. Nor does the record disclose whether the place the juror was talking about was the place plaintiff claimed to have received his injury. The evidence is so indefinite, so uncertain, we cannot say the court below erred in refusing to set aside the verdict and grant a new trial.

It is probably proper to say, assuming that the jury were, as is usually done, instructed before they left the court room not to talk about the case among themselves, and not to form an opinion until the case was finally submitted to them. If a juror disobeyed the instruction by talking about the case, the court below might have punished him for disobedience of its instructions. Misconduct of a juror in some sense affects the conduct of all the members of the jury, and the proper administration of justice as well as the rights of suitors.

While it is shown the juror was talking about something, was talking about the case, that he kept on talking down at the mill and on the way back to the courthouse, what he said is not shown. And in our opinion the plaintiff does not show himself entitled to a new trial. The judgment of the court of common pleas is affirmed with costs, no penalty.